## Joseph Salomon, Adm'r, v. Jesse Holdom, Adm'r.

1.  CONTEMPT OF COURT—*Duty of Court Before Commitment is
Ordered.*—The courts should always jealously guard the liberties of the
citizen and should shrink from depriving any one of his freedom on
account of a contempt, until he has been given every reasonable oppor-
tunity of complying with the law certainly and definitely prescribed and
made known to him by the orders or directions of the court.

2.  SAME—*An Order of Commitment for, Held Void for Uncertainty.*—
An administrator was ordered to settle his accounts by a certain day, and
having failed to do so, he was directed to be imprisoned for contempt
"until he shall have complied with said order or until discharged by due
process of law."  *Held*, that as it was impossible for said order to be
complied with, the time having expired, the imprisonment might be
continued indefinitely, and that the order of commitment was therefore
void for uncertainty.

3. Same—*An Order of Commitment for, Held Not Justified by the Facts.*—An administrator was ordered to settle his account by a certain day, and having failed to do so he was ruled to show cause why he should not be attached for contempt, and in response to said rule he filed a report showing receipts and disbursements and balance on hand, but did not pay over the balance to the person entitled thereto. On the same day, but whether before or after the filing of said report the record did not show, the court ordered him imprisoned for contempt. *Held*, that the order of commitment was not legally justified by the facts shown by the record, and that it was prematurely entered in that the court should have first ascertained the balance due, and ordered its payment within a reasonable time.

4. Administration of Estate—*An Order on an Administrator to " Settle his Final Account" Construed.*—An order on an administrator to "settle his final account" should be construed in the light of the statutory provisions with regard to such settlements, and to be held to mean that the administrator file or present his account in court so that it can be considered and adjusted by the court, and when its items have been passed upon by the court and the balance determined that he then, and not until then, if the court shall so order, pay over such balance pursuant to the order of the court.

5. Same—*Payments by Administrators to Collect.*—An undertaker's bill and a bill of a physician for treatment of a deceased person during his last illness, should not be paid by an administrator to collect, but if paid and shown to be just and reasonable, the court may allow them and give the administrator proper credit.

Contempt Proceedings.—Error to the Probate Court of Cook County; the Hon. C. C. Kohlsaat, Judge, presiding. Heard in this court at the October term, 1897. Reversed. Opinion filed December 23, 1897.

S. P. Shope and David J. Baker, attorneys for plaintiff in error.

Richard Prendergast and Jesse Holdom, attorneys for defendant in error.

Mr. Justice Windes delivered the opinion of the Court.

Plaintiff in error, Salomon, was appointed administrator *de bonis non* to collect of the estate of George Wincox, deceased, by the Probate Court of Cook County, December 1, 1894, and qualified as such and received his letters the same day.    February 11, 1897, said Probate Court appointed

defendant in error, Holdom, administrator proper of said estate, who on the same day qualified and received his letters as such administrator. Also on the same day said court further ordered that Joseph Salomon, administrator to collect, "settle his final account with said estate within ten days from this date." February 25, 1897, an order was entered extending the time five days in which to settle the final account of the administrator to collect.

March 3, 1897, on notice to said Salomon, and he being present in court, said court ordered that a rule be entered "on said administrator to collect requiring him to appear before the court on the 4th day of March, 1897, at 2:30 P. M., to show cause why he should not be attached for contempt of court in failing to comply with the order of February 11, 1897, requiring him to settle his final account, and which order was by an order of this court entered on the 25th of February, extended five days."

March 4, 1897, said Salomon filed his account as administrator to collect, and also his answer to the rule to show cause, stating that said Salomon shows to the court " that in obedience to the rule entered herein to show cause, etc., he has filed his account and asks that it be approved. And further informs the court that the filing of the same has heretofore been delayed by reason of his counsel's inability to prepare the same by reason of other engagements, and prays that said rule may be discharged."

Said account is sworn to be true and perfect by said Salomon, and shows, among other things, that he had received $29,857.02 assets of said estate, and had paid out $5,030.65, including $1,000 to the administrator and $1,750 attorney's fees, the last item " subject to the court's order," also funeral expenses and bill of physician to deceased in last illness.

Also on March 4, 1897, said Probate Court entered the following order, viz.: " This day came Joseph Salomon, administrator to collect of the estate of George Wincox, deceased, in answer to a rule issued herein on him on the 3d day of March, A. D. 1897, requiring him to be and appear before this court on the 4th day of March, A. D. 1897, at

2:30 o'clock P. M., then and there to show cause, if any he has, or can show, why he should not be attached for contempt of this court for failure to comply with the order of this court entered herein on the 11th day of February, A. D. 1897, requiring him to settle his final account with said estate, and which order was, by order of this court entered herein on the 25th day of February, A. D. 1897, extended for five days. And also came Jesse Holdom, administrator proper of the estate of said George Wincox, deceased, and also came Annie M. Smith and Sadie Applegren, heirs at law of said George Wincox, deceased, by Bulkley, Gray & More, their attorneys. And this cause coming on to be heard on said rule, and said administrator to collect failing to show cause why he should not be attached for contempt of this court for failure to comply with the order of this court entered herein on the 11th day of February, A. D. 1897, requiring him to settle his final account with said estate, and which order was, by order of this court entered herein on the 25th day of February, A. D. 1897, extended for five days.

" It is ordered that said Joseph Salomon, as administrator to collect of said estate be, and he is hereby adjudged guilty of contempt of this court. And it is further ordered that the said Joseph Salomon be attached, and that a writ of attachment be issued under the authority and seal of this court, directed to the sheriff of Cook county, Illinois, commanding him to arrest the said Joseph Salomon, administrator to collect as aforesaid, and bring him before this court forthwith to show cause, if any he has or can show, why he should not be punished for contempt of this court for failing and refusing to comply with the said order of this court, entered herein on the said 16th day of February, A. D. 1897.

" And thereupon afterward this day came the said Joseph Salomon in custody of the sheriff of Cook county, Illinois, under said writ of attachment, and showing no cause to the contrary, it is ordered by the court that he be committed to the common jail of Cook county, Illinois, there to remain until he shall have complied with said order of this court entered herein on said 11th day of February, A. D.

1897, or until discharged by due process of law, and that a warrant for that purpose issue; and the sheriff of this county is directed to take him into custody forthwith."

An appeal was prayed and allowed from this order on said Salomon giving bond.

March 10, 1897, objections to said account of said Salomon were filed in said Probate Court, and the court ordered that said account and objections be set for hearing March 18, 1897, at 10:30 A. M. March 16, 1897, so much of said order of March 4th as allowed an appeal therefrom was vacated and set aside, and on March 18, 1897, the hearing on said objections to said account was continued, because it appeared to said Probate Court that said Salomon was detained by process of law and could not therefore be present in court.

Divers errors are assigned by plaintiff in error, the substance of which are, that said order of commitment is uncertain, indefinite and incapable of being performed; that there was no act or thing done by said Salomon which could be construed as a contempt; that no hearing or opportunity for a hearing was granted to said Salomon before said order of commitment was entered, and that the Probate Court had no jurisdiction to enter said order of March 4, 1897. In the view this court has taken of this case, it seems unnecessary to consider whether or not the Probate Court had jurisdiction, or whether said Salomon was accorded the hearing which the law demands should be given every person charged with contempt before he should be punished. Conceding that there was jurisdiction, on which we express no opinion, and that said Salomon was accorded such a hearing as he was legally entitled to have, which we are inclined to think, under the proceedings shown by the record, was not given him, still, was said order of commitment justified?

The courts should always jealously guard the liberties of the citizen, and should shrink from depriving any one of his freedom until he has been given every reasonable opportunity of complying with the law certainly and definitely

prescribed and made known to him by the orders or directions of the court.

The Supreme Court, on an application for a writ of habeas corpus, in People v. Pirfenbrink, 96 Ill. 68, where the relator, on a proceeding for contempt for failure to comply with the orders of the court, was adjudged to stand committed to the county jail until the further order of the court, held the order to be void for uncertainty, and discharged relator. The court said : "All judgments must be specific and certain. They must determine the rights covered or the penalties imposed. They must be such as the defendant may readily understand and be capable of performing."

The order of February 11, 1897, directed Salomon to "settle his final account with said estate within ten days from this date." Later this time was extended five days. The order of commitment directs Salomon to be imprisoned until he shall have complied with said order of February 11th, or until discharged by due process of law.

The time prescribed by the order of February 11th, within which he was directed to settle his account, had expired, and also the five days' extension thereof. It was an impossibility, then, on March 4th, for Salomon to obey the order, because the time had already expired, and his imprisonment might, under the words of the order, be forever, or until discharged by due process of law. If it be said he might be released under the other clause of the order "by due process of law," that, too, is uncertain.

In King v. James, 5 Barn. & Alderson, 894, it was held that a commitment, "until he should be discharged by due course of law," was bad, because it was not for a time certain. This case is cited with approval in 96 Ill., *supra*, where the court held that a commitment until the further order of court, was void.

But it is unnecessary to base our decision on this uncertainty of the order in its wording, and the impossibility of performance by Salomon.

Salomon was ordered to settle his final account. Bouvier defines settle, "to adjust or ascertain; to pay," and says,

"two contracting parties are said to settle an account when they ascertain what is justly due by one to the other; when one pays the balance or debt due by him, he is said to settle such debt or balance."

Webster's International Dictionary defines settle, "to adjust, as accounts; to liquidate; to adjust differences or accounts; to balance; as to settle an account." The Century Dictionary defines settle in practically the same way. Moreover, an examination of the statutory provisions with regard to settlements, both by administrators to collect and administrators proper, shows that it is intended that when they are ordered to make settlement of their accounts, they should file with the court a statement of their receipts and disbursements; that this statement is to be examined by the court, and the balance due ascertained, which balance is to be paid over to the proper parties upon the order of the court to that effect, after demand made—in the case of administrators to collect "when legal demand is made therefor," and in case of administrators proper "within thirty days after demand made." Rev. St., Ch. 3, Secs. 17, 112 and 114.

Thus it would seem clear, using the word settle as above defined and used, and we think that is the usual or ordinarily accepted meaning when applied to an account, the order of February 11, 1897, must mean that Salomon should file or present his account in court, so that it could be considered and adjusted by the court, and after a hearing, and when its items, whether of debit or credit, had been passed upon by the court, and the balance due from him as administrator to collect had been determined, that he should then, and not until then, if the court should thereafter order, pay over, pursuant to such order of the court, such balance. How was it possible for Salomon alone to adjust his account without a hearing and consideration of its items by the court ? How could he, without the assistance of the court, ascertain what was justly due from him ? How could he alone fix the balance he should pay over to the administrator proper ?

He was an administrator to collect. The statute, Rev. Stat. of Ill., Ch. 3, Sec. 15, says, he shall collect the goods, chattels and debts of deceased at such reasonable and necessary expense as shall be allowed by the court, and for his trouble incurred the court may allow such commission, not to exceed six per cent on the amount of the personal estate, as said court may deem just and reasonable.

Section 17 makes it his duty to deliver on demand to the administrator proper all property and money in his hands, save such commission as he may be allowed by the court.

It seems plain that the law contemplates that the court should pass upon any expense which he may, as administrator to collect, incur, as also the commission, if any, to which he may be entitled.

The record is devoid of anything showing that the Probate Court had passed upon the items of Salomon's account, filed in court in answer to the rule upon him to show cause, or that any demand was made upon him. This account has an item of $1,000 credited to the administrator, probably for commissions. There also are other items of expenditure, such as undertaker's bill and for physician in deceased's last illness, which, while they may not be proper payments to be made by an administrator to collect, were within the power of the court to allow and credit to him if just and reasonable, or reject if improper. However, if it be said that the order of February 11th meant that Salomon should file his account, and because he failed the court held that he was in contempt for a failure to obey the order of the court, that was done. He filed the account, as his answer states, in obedience to the rule to show cause, on the same day the order of commitment was entered, and tells why he had not filed it sooner. If in fact the account and answer of Salomon were not filed before the order of commitment was made, then the record should so show, which it does not.

According to Salomon's own showing, after allowing him all his claims of credits, he has in his possession, as administrator to collect of said estate, nearly $25,000 of assets, which

he has no just right to retain. He certainly should have shown some more willingness to do his duty as an officer of the Probate Court than is manifested by this record, and were it not that the proceedings disclosed fail to conform to the requirements of the law in essential particulars necessary to be observed in order to a proper protection of the liberty of the citizen, and a careful, conservative and orderly procedure of the courts in punishments for contempt, we would be disposed to affirm the action of the Probate Court. But we are of opinion that said order of commitment was not legally justified under the facts shown by this record; that it was prematurely entered, in that the court should have first ascertained the balance due from said Salomon and ordered him to pay the same within a reasonable time, and even if Salomon was in contempt of the court up to the time of the entry of said order, the filing of his answer and account, at that time, was a substantial compliance with the order, and it should not have been entered.

The order of said Probate Court of March 4, 1897, is reversed.