## Samuel Kanter v. Clerk of the Circuit Court.
## David Weber v. Same.

1. STATUTES—*Relating to Production of Papers and Books.*—To procure the production of books and papers in court under Secs. 12 and 14, R. S., the petitioner must show that the books and papers which he seeks to compel the production of, contain matter relevant to the investigation then being or about to be conducted by the petitioner.

2. CONTEMPT—*Order of Court, Although Too Broad, Must be Complied with.*—The too great scope or indefiniteness of the order is no excuse for not complying with the portion which is certain and definite.

3. SAME—*Proceedings Should be in the Name of the People.*—Contempt proceedings should be in the name of the people.

4. SAME—*When Judgment Sufficiently Sets Forth Cause for Which Final Order Was Entered.*—A judgment in proceedings for contempt sufficiently sets forth the cause for which the final order was entered, if there appear upon the face of the order the general object and purpose of the proceeding together with the finding of the court connected by apt reference to the moving papers.

5. SAME—*Proceedings Strictly Regarded.*—Proceedings for contempt as well as those resulting in a deprivation of the personal liberty of a subject are strictly regarded.

6. CONSTITUTIONAL LAW—*Extent of Constitutional Right Not to Furnish Evidence Which Might Tend to Criminate One.*—The constitutional right of an accused not to furnish evidence which might tend to criminate him extends to all proceedings sanctioned by law. Neither civil nor criminal courts, quasi-judicial tribunals, grand juries, commissioners, courts martial or inquisitors of any kind can compel a person to give evidence which may tend to convict him of a criminal offense.

7. SAME—*Right of Exemption from Furnishing Incriminating Evidence is Personal.*—The right of a witness to refuse to answer incrim-

inating questions or to produce incriminating documents is personal; it can not be claimed for him by a mere party to the proceeding, and he can not avail himself of such right by mere silence or mere refusal to obey a subpoena *duces tecum.* His refusal must be by him placed upon the ground that to do so would be to furnish evidence tending to incriminate himself.

8.   FINES AND PENALTIES—*Commitment is but an Incident Where a Fine is Imposed.*—Where a fine is imposed, it is the punishment ordered, and the commitment is but an incident.

9.   SAME—*Improper Order of Commitment.*—Where the fines of several parties are separate, it is error to commit each of them to jail until his fine is paid " or until he and they and each of them be otherwise released pursuant to law."

Contempt of Court.—Appeals from the Circuit Court of Cook County (two cases); the Hon. EDWARD F. DUNNE, Judge presiding. Heard in the Branch Appellate Court at the October term, 1901.   Reversed and remanded.   Opinion filed June 13, 1903.

October 15, 1900, a petition was filed in the Circuit Court of Cook County, signed by Robert Lindblom, as president of the civil service commissioners of Chicago.

The petition further sets forth that the petitioners had been for some days prior thereto holding an investigation into the conduct of a certain examination known as the examination for lieutenants of police, held June 16, 1900; that in the course of such examination the petitioners deemed it necessary to have produced before them certain memoranda, papers, account books and other books of entry, " owned by a certain firm known as Kanter & Weber, and composed of Samuel Kanter and David Weber, for the purpose of examining said account books and other books of entry with reference to matters in issue before said petitioners in said investigation."

The petition recites that a certain witness had testified that certain entries on these books would show facts material to the issues, and that the petitioners on Friday, the 12th day of October, 1900, caused a subpoena to be served on Kanter and Weber for the production forthwith of said books, and that Kanter and Weber then and there refused to produce such books.

The prayer of the petition is that, in accordance with

section 33 of the civil service act, the court should enter an order to compel the production before the commissioners " of all books, documents, papers and memoranda in the possession or control of said Samuel Kanter and David Weber referring to any matter or thing connected with said examination for lieutenants of police or referring to any transactions between said Kanter & Weber and any officers or members of the police force of the city of Chicago from January 1, 1900, to the present day; and that in case of refusal by said Samuel Kanter and David Weber to obey such subpoena an attachment for contempt may issue against them."

An order for a subpoena was issued on the original petition. This order was vacated, and no further subpoena than the original subpoena, dated October 12th, issued from the civil service commission. An amended petition was filed October 17th.

The amended petition recites:

" The particular books which are deemed relevant and pertinent to the investigation referred to in their petition heretofore filed, which said books are owned or controlled by David Weber and Samuel Kanter, or one of them, are certain books known as a petty cash book, beginning January, 1900, a general cash book, a certain ledger known as old ledger No. 1, a trial balance book in current use, and a certain diary kept by Samuel Kanter, from which said books your petitioners state, upon information and belief, there will be obtained evidence relevant to the investigation referred to in their petition heretofore filed."

That a witness by the name of Anne Knabejohann testified before the commission that certain police officers of the city of Chicago who participated in and took said examination of June 16, 1900, for police lieutenants, " were in the office of said David Weber and Samuel Kanter while copies of the official questions were then and there being prepared for said examination."

" And your petitioners further state upon information and belief, and which was so testified to by said witness, that the books above mentioned, or other books, documents,

and papers in the possession and control of the said David Weber and Samuel Kanter, or one of them, will show certain entries therein of money paid by the above named officers, or other officers in the police department of the city of Chicago, for copies of official questions of the examination held by the said commissioners on said June 16, 1900, in advance of said examination, as testified to under oath by said witness."

The petitioners on information and belief state that these books and papers particularly named, as well as other books and papers in the possession and control of David Weber and Samuel Kanter, or one of them, will disclose information and evidence of transactions between certain police officers and said Weber and Kanter, or one of them, pertinent and relevant to said examination.

The prayer of the amended petition is the same as the original petition. The commission failed to cause another subpoena to issue, summoning the respondents to appear before their body. The only subpoena issued by the commission was that of October 12, 1900.

On the amended petition the court entered its order of October 17th, ordering Samuel Kanter and David Weber, or one of them, to produce or cause to be produced before Robert Lindblom, John W. Ela and John W. Ludwig, civil service commissioners, in their office in the city hall, at 11 o'clock in the forenoon of October 18, 1900, " a certain petty cash book from January 1, 1900, a certain general cash book, a certain trial balance book in current use, a certain ledger known as old ledger number 1, and a certain diary kept by said Samuel Kanter, and all documents, books, papers and memoranda relating or relevant to the said examination held by the said civil service commissioners for police lieutenants on June 16, 1900, and all documents, books, drafts, copies, files and papers whatsoever, relevant or pertinent thereto, or relevant or pertinent to a certain investigation into the conduct of said examination."

October 18th, prior to 11 o'clock A. M., a motion was made to vacate said order of October 17th, which directed the

respondents to appear before the civil service commission at 11 o'clock A. M., October 18th. This motion to vacate was set down for hearing by the court October 19th at 10 o'clock A. M., and on argument was denied by the court October 19th.

The respondents failed to produce any of the books and papers mentioned in the order of October 17th.

Respondents filed and were heard upon a motion by them made to quash the rule entered requiring them to show cause why they should not be punished for contempt.

Upon the overruling of the motion to quash, respondents filed their separate answers, which are respectively as follows :

" Now comes the respondent, David Weber, in his own proper person and by Moritz Rosenthal, his attorney, and saving and reserving unto himself all manner of objection and exception to the foregoing proceedings herein, upon the grounds stated and set forth in his motion heretofore filed in said cause, praying that said order heretofore entered on the 17th day of October, 1900, should be vacated, annulled and set aside, and saving and reserving unto him· self all manner of objection and exception to the foregoing proceedings herein upon the grounds stated and set forth in his motion heretofore filed in said cause, praying that said rule to show cause why he should not be punished for contempt of this court, heretofore entered on the 19th day of October, 1900, be quashed, and excepting to and denying the jurisdiction of this court in the premises, for answer to said rule to show cause, states the following :

That he is now and for thirty-four years last past has been a resident of the City of Chicago, County of Cook and State of Illinois, and a citizen of the State of Illinois and of the United States of America, and that he is and has been for three years last past engaged in business in the city of Chicago as a member of the firm known as the Chicago Credit Company, and that said Samuel Kanter is associated with this respondent in the conduct of said business.

This respondent, further answering, says that for about three years preceding the 11th day of October, 1900, one Anna Knabejohann was in the employ of said Chicago Credit Company as a general book-keeper, and that on or about said 11th day of October, 1900, said Anna Knabe-

johann appeared before the civil service commission of the city of Chicago, and then and there testified, on oath, that certain police officers of the city of Chicago who participated in the examination held by said civil service commission on June 16, 1900, for police lieutenants, were furnished by this respondent and others with copies of official questions of said examination to be held by said civil service commission, in advance of said examination; and that said Anna Knabejohann then and there testified that certain books, documents and papers alleged by her to have theretofore been in the possession and control of this respondent and said Samuel Kanter contained certain entries of moneys alleged to have been paid by said officers to this respondent and said Kanter, for copies of said official questions, in advance of said examination, and that said books, papers and documents were the books, papers and documents of and belonging to said Chicago Credit Company and this respondent and said Samuel Kanter, and were kept by this respondent and said Samuel Kanter in the due course of their business.

This respondent, further answering, says that he is informed, and, based upon said information, verily believes and charges the fact to be, that said civil service commission, at the time that said Anna Knabejohann so testified before said commission, and at the time this respondent was ordered to produce or cause to be produced before said commission said books, papers and documents, was investigating said examination so held for lieutenants of police on the 16th day of June, A. D. 1900, for the following purposes, to wit:

First. To determine whether said civil service commission should vacate and set aside examination.

Second. To determine whether any of the persons participating in said examination had been furnished lists of the official questions in advance of said examination, by this respondent and others.

Third. For the purpose of determining whether this respondent and others were guilty of a violation of the civil service act of the State of Illinois, in furnishing said questions, as alleged, as aforesaid.

Fourth. That said commission at said time was engaged in said investigation for the purpose of determining whether said commission should prosecute this respondent and others by way of a criminal information or indictment for the alleged violation, as aforesaid, by this respondent and others, of said civil service act.

Kanter v. Clerk of the Circuit Court.

This respondent further states the fact to be that said civil service commission sought to compel this respondent to produce said books and papers before said commission, in order that said commission might obtain evidence against this respondent which might tend to incriminate respondent of an alleged violation of said civil service act.

This respondent further states the fact to be that said civil service commission, at the time the respondent was ordered to produce said books, papers and documents or cause the same to be produced before said commission, had then under consideration, as an investigating body, certain charges against this respondent for an alleged criminal violation of the civil service act of the State of Illinois; that said commission had at that time already heard testimony in reference to said alleged violation by this respondent of said civil service act.

This respondent charges the fact to be that he was subpoenaed to appear before said civil service commission for the purpose of requiring him to furnish evidence against himself which might tend to incriminate him of an alleged violation of said civil service act, and that the order of this court to compel respondent to produce or cause to be produced said books, papers and documents before said commission, was procured by said commission for the purpose of compelling this respondent to furnish evidence against himself which might tend to incriminate him of an alleged violation of said civil service act.

This respondent, further answering, states that his alleged disobedience of said subpoena of said commission and said order of this court, was based upon the advice of his counsel and attorney, Moritz Rosenthal; that said Moritz Rosenthal is a member of the bar of the State of Illinois, and is and for several years last past has been practicing law in the city of Chicago, and is a lawyer in good standing; that said Rosenthal is, and respondent believes him to be, fully informed, as counselor at law, regarding the rights and duty of this respondent in the premises, and that this respondent informed said Rosenthal, before receiving such advice from said Rosenthal, fully and truthfully concerning the facts hereinabove set forth, and thereupon said Rosenthal, being so informed, advised this respondent that it was his right, under the constitution and laws of the State of Illinois and under the constitution and laws of the United States, to refuse to obey said subpoena and said order, as aforesaid; that this respondent's alleged refusal to so obey was in good faith, based

entirely upon the advice so given him by said Rosenthal, and having been so advised, this respondent believed and still believes that he had the lawful right and that it was his duty to decline to obey said subpoena and said order, as aforesaid, and that his alleged refusal to obey said subpoena and said order, as aforesaid, was and is not because of any intention on his part to be disrespectful to said civil service commission or this honorable court, but on the contrary, was and is in the assertion and maintenance of his legal rights in the premises, and this respondent says that he stands ready and willing at all times to abide by and obey all lawful and proper subpoenas of said civil service commission, and all lawful and proper orders of this honorable court.

This respondent, further answering, says that he believes that said advice so given him by said Rosenthal, was given in good faith, and because said Rosenthal believed said advice to be based upon the laws of the State of Illinois and of the United States, and that this respondent had no other information or personal knowledge on said subject, except such as he received from said Rosenthal.

And this respondent, further answering, says:

1. That the petitions upon which said order is based were and are insufficient to give said court power and jurisdiction to enter said order.

2. That the petitions show upon their face that if the facts set forth therein are true, such facts would tend to criminate this respondent and subject him to prosecution under the criminal laws of the State of Illinois, and would compel him to give evidence against himself in a criminal case; that for these reasons this respondent is not bound to furnish incriminating evidence against himself.

3. Said order is void because its enforcement would be an unreasonable search and seizure of the books, papers, documents and effects of this respondent, in violation of the Constitution of the State of Illinois.

4. Said order is insufficient and void in law, because it makes no findings of facts upon which said court would be authorized and warranted to proceed against this respondent, and make the order complained of.

5. That said order has no authority or power to order this respondent to produce or cause to be produced before said civil service commissioners the books mentioned in said order.

6. That said order deprives this respondent of the possession of said property, to wit, a certain petit cash book.

for January 1, 1900, a certain general cash book, a certain trial balance book in current use, a certain ledger known as old ledger No. 1, and a certain diary kept by Samuel Kanter, without any benefit to said commissioners, and without any provision what shall be done with said books when produced, and without providing that they shall be returned to this respondent.

7.   This respondent is not able to comply with the order compelling him to produce or cause to be produced, a certain general cash book, because the description of such cash book is so insufficient that he can not comply therewith; that he can not comply with the order compelling him to produce or cause to be produced, a certain trial balance book in current use, because it is too indefinitely described for this respondent to recognize such description, for the purpose of complying with said order; that said order is insufficient in not stating that said books are the property of any person or firm.

8.   That said order is insufficient and void in ordering this respondent to produce or cause to be produced, 'all documents, books, papers and memoranda relating or relevant to the said examination held by the said civil service commissioners for police lieutenants, on June 16, 1900, and all documents, books, drafts, copies, files and papers whatsoever relevant or pertinent thereto, or relevant or pertinent to a certain investigation into the conduct of said examination,' for the reason that the description of said books, documents, papers and memoranda is so vague that this respondent could not comply therewith; that he has no means of determining himself what documents, books, papers or memoranda relate or are relevant to such examination, or what documents, books, drafts, copies, files and papers are relevant or pertinent thereto; that the description of such documents, books, papers, drafts, copies, files, etc., is so insufficient that this respondent could not comply therewith.

9.   That said order does not find that the books, papers and documents called for by said order are the books, papers and documents of said Samuel Kanter and David Weber, or either of them.

10.   Said order is void in failing to set forth that it is within the power of this respondent to comply with said order.

11.   That said petitions upon which said order is based recite that said civil service commissioners are conducting an investigation with reference to an examination held for

police lieutenants, on June 16, 1900, but said petitions fail to set forth facts which would tend to show that said books from January 1, 1900, would be material and relevant to said investigation, and this respondent therefore says that said order, in that it compels him to produce books kept from January 1, 1900, extends beyond the scope of said investigation.

12. Because said petitions, and each of them, fail to show the particular entries in said books called for, which are relevant and material to said investigation.

13. Because said petitions, and neither of them, show that the books, papers and documents called for, are relevant to said investigation.

14. Because said petitions fail to show that said books, papers and documents called for are now in the possession or under the control of this respondent.

15. Said amended petition purports to be filed on behalf of Robert Lindblom, John W. Ludwig and John W. Ela, civil service commissioners of the city of Chicago, but said amended petition and verification is signed only by said Robert Lindblom.

16. Said amended petition fails to show that said Robert Lindblom, John W. Ludwig and John W. Ela are civil service commissioners of the city of Chicago.

17. Said amended petition fails to show that said Robert Lindblom is president of the civil service commissioners of the city of Chicago.

18. Because said petitions, and each of them, are, in other respects, uncertain and defective.

19. This respondent further says that said order is in violation of—

(a) Section 2 of article 2 of the Constitution of the State of Illinois, which reads as follows: 'No person shall be deprived of life, liberty or property without due process of law.'

(b) Section 6 of article 2 of the Constitution of the State of Illinois, to wit: ' The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures, shall not be violated, and no warrant shall issue without probable cause supported by affidavit, particularly describing the place to be searched and the person or things to be seized.'

(c) Section 10 of article 2 of the Constitution of the State of Illinois, to wit: 'No person shall be compelled, in any criminal case, to give evidence against himself, or be twice put in jeopardy for the same offense.'

Kanter v. Clerk of the Circuit Court.

(*d*)  The fourteenth amendment of the Constitution of the United States, to wit:  'All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the state wherein they reside.  No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States, nor shall any state deprive any person of life, liberty or property without due process of law, nor deny to any person within its jurisdiction, the equal protection of the laws.'

20.  Said order is void because it is based upon section 33 of 'An act to regulate the civil  service  of  cities,' approved March 20, 1895, which said section 33 is unconstitutional and void, in that it attempts to delegate judicial power in the civil service commissioners of Chicago, and that it creates an extra judicial body unknown to the constitution and laws of the State of Illinois.

21.  That said order is void, because said Circuit Court has only jurisdiction of all causes in law and equity, and that a proceeding commenced under section 33 is not either a cause in law or in equity over which said Circuit Court has conferred upon it jurisdiction by the constitution of the state.

22.  That the said board of civil service commissioners is not a court provided for by the constitution of the state, and that the powers conferred upon them are judicial powers which are, by article 6 of section 1 of the constitution, conferred only upon supreme courts, circuit courts, county courts, justices of the peace, police magistrates, and such courts as may be created by law in and for cities and incorporated towns, and said board of civil service commissioners is not a court which has been created by law for the city of Chicago.

23.  That said order is in violation of article 3 of the Constitution of the State of Illinois, which provides that the powers of the government of this state are divided into three distinct departments, legislative, executive and judicial, and no person or collection of persons being one of these departments shall exercise any power  properly belonging to either of the others, except as is, in and by said constitution expressly directed or permitted.

24.  And this respondent, further answering, states that said order is void in compelling him to produce a certain diary kept by said respondent, Samuel Kanter, over whom this respondent has no control, and over which said diary

this respondent has no control, and which said diary is not and never had been in the possession of this respondent.

This respondent therefore prays, in view of the premises, that said rule to show cause heretofore entered against him be discharged.

DAVID WEBER."

Affidavit of David Weber, signed and sworn to, as to the truth of the foregoing answer.

Answer of Samuel Kanter, containing the same allegations as the answer of David Weber, heretofore abstracted, with the exception of paragraph No. 24, which is omitted.

Affidavit of Samuel Kanter as to the truth of the answer signed and sworn to by him.

November 8, 1900, the following order, entitled, In the matter of the application of Robert Lindblom et al., Civil Service Commissioners of the City of Chicago, from order to compel the production of certain evidence by Samuel Kanter and David Weber, was entered:

" This matter coming on to be heard upon the rule entered herein by this court on the 19th day of October, upon David Weber and Samuel Kanter to show cause why they and each of them should not be attached and punished for contempt of this court in refusing to obey and comply with the terms of a certain order theretofore entered on the 17th day of October, directing the said David Weber and Samuel Kanter and each of them to produce or cause to be produced certain books before Robert Lindblom, John W. Ela and John W. Ludwig, civil service commissioners of the city of Chicago, in their office in the city hall in the city of Chicago on October 18, 1900, at 11 o'clock A. M., and upon the affidavit of Robert Lindblom and Frank Stible and upon the answer to said rule filed by David Weber and the answer thereto filed by Samuel Kanter, and the said Weber and said Kanter appearing before me by counsel and after hearing counsel for the said David Weber and said Samuel Kanter and counsel for the said civil service commissioners of the city of Chicago, I do hereby adjudge the said David Weber and Samuel Kanter guilty of a contempt of this court, in that they and each of them willfully disobeyed the order entered herein by this court and hereto annexed, dated the 17th day of October, A. D. 1900, by failing to produce or cause to be produced before the said Robert

Lindblom, John W. Ela and John W. Ludwig, civil service commissioners of the city of Chicago, at the time and place required in and by said order, the books referred to in said order, and that such misconduct on the part of them and each of them has tended to defeat and impair the rights of the said civil service commissioners, and I hereby order and direct that the said David Weber and the said Samuel Kanter and each of them pay to the clerk of this court a fine of $500 each, and that in default of immediate payment of such fine of $500 by said David Weber he, the said David Weber, be imprisoned in the common jail of the county of Cook until he shall pay said fine of $500, and that in default of immediate payment of such fine of $500 by said Samuel Kanter to be imprisoned in the common jail of the county of Cook until he shall pay said fine of $500, or until he and they and each of them be otherwise released pursuant to law."

MORITZ ROSENTHAL, attorney for appellants; ADOLPH MOSES, of counsel.

CHARLES M. WALKER and WILLIAM HOWARD FITZGERALD, *amici curiae.*

MR. PRESIDING JUSTICE WATERMAN delivered the opinion of the court.

The statute to regulate the civil service of cities, sections 12 and 14, provides:

" In the course of an investigation of charges, each member of the commission shall have the power to administer oaths  *  *  *  and shall have power to secure by its subpoena  *  *  *  the production of books and papers relevant to such investigation."

We are of the opinion that in accordance with the rule laid down in Lester v. The People, 150 Ill. 408, and Bentley v. The People, 104 Ill. App. 353, it was incumbent upon the petitioners in this case to show that the books and papers which they sought to compel the production of, contained matter relevant to the investigation then being or about to be conducted by the petitioners. Such showing was made by the petition; necessarily the statements of the commissioner were made upon information and belief; more than this was not required.

If none or no part of the books and papers mentioned in the petition were in the possession or under the control of the respondents, or either of them, either might have so replied. As to a certain diary kept by Samuel Kanter such answer was made by David Weber; while in another portion of the answers complaint is made that the order to produce deprives respondents of the possession of certain books therein named.

If the order to produce was too broad, or as to a portion thereof compliance was not in the power of either respondent, an application for a modification thereof might have been made.

The too great scope or indefiniteness, of the order, if such there were, was no excuse for not complying with the portion that was certain and definite. Tolman v. Jones, 114 Ill. 147; Berkson v. The People, 51 Ill. App. 102; same, 154 Ill. 81; Clark v. Burke, 62 Ill. App. 252; same v. same, 163 Ill. 334.

Appellants contend that the civil service commission was engaged in an investigation for the purpose of determining, among other things, whether a criminal prosecution of appellants should not be begun because of appellants' conduct in respect to the examination for lieutenants of police; and that consequently it had no "legal right to summon respondents to produce their books and papers."

We are not aware of either statute, rule or principle of law that forbids the issue of a subpoena *duces tecum*, to anybody; whether the person so summoned will be compelled to obey the process is another matter.

Had appellants complied with the writ and produced the books called for, whether thereafter they could have been held in a criminal proceeding for conduct disclosed by, or upon evidence taken from such books, is a matter not presented by these appeals.

No such question as arose in United States v. Edgerton, 80 Fed. Rep. 374, arises in either of the cases now before the court. The principal and important contention presented to us is whether the constitutional right of appel-

lants not to furnish evidence which might tend to incriminate them was violated by the final order of the court below.

The constitutional exemption from compulsion in this regard extends to all proceedings sanctioned by law.

Neither civil nor criminal courts, quasi-judicial tribunals, grand juries, commissioners, courts martial or inquisitors of any kind can compel a person to give evidence which may tend to convict him of a criminal offense.

If either of the respondents had answered that the production of the books and papers called for, or any designated portion thereof, would tend to convict him of a criminal offense, he could not have been compelled to bring forward anything that would have such tendency. Counselman v. Hitchcock, 142 U. S. 547; Boyd v. United States, 116 U. S. 616; State v. Simmons Hardware Co., 15 L. R. A. 676.

Broad and sweeping as is the constitutional provision it is against compulsion only. The right of free speech, even to those criminally accused, has not been taken away by the constitution; and any man suspected or accused of crime may freely say, exhibit and produce what he will; he may waive his constitutional right, talk and disclose as he sees fit.

The respondents have neither obeyed the order of the court to produce the books and papers called for, nor said that to do so would be to give evidence tending to incriminate them. A portion of the answers made by respondents are in this regard as follows:

"And this respondent, further answering, says:

1. That the petitions upon which said order is based were and are insufficient to give said court power and jurisdiction to enter said order.

2. That the petitions show upon their face that if the facts set forth therein are true, such facts would tend to criminate this respondent and subject him to prosecution under the criminal laws of the State of Illinois, and would compel him to give evidence against himself in a criminal case; that for these reasons this respondent is not bound to furnish incriminating evidence against himself."

Not for these reasons, but because of the constitution,

neither of the respondents " was bound to furnish incriminating evidence against himself."

Whether the " facts " set forth in the petition were true or false was immaterial to the right of each respondent to refuse to furnish incriminating evidence against himself.

To avail himself of such right he had only to claim it upon such ground. The right of a witness to refuse to answer incriminating questions or to produce incriminating documents is personal; it can not be claimed for him by a mere party to the proceeding. Wharton on Evidence, sections 533–536.

A person can not avail himself of such right by mere silence or mere refusal to obey a subpœna *duces tecum.* His refusal must be by him placed upon the ground that to do so would be to furnish evidence tending to incriminate himself.

That the final order reads, "I do hereby adjudge the said David Weber   *   *   *   guilty of contempt" is inconsequential. If it had read "The court does hereby adjudge," or " It is hereby adjudged," it would have been no more and no less the sentence of the law than it is in the record written out by the clerk. Judges do not make the law, they declare it; they do not punish offenders against its majesty; the law does this. Judges and courts are but instruments for carrying into effect the law of the land; they are usually vested, in matters of contempt, with discretion as to the amount and kind of punishment. The proceeding was properly entitled in the name of the people. Rawson v. Rawson, 35 Ill. App. 507; Stearnes v. Joy, 41 Ill. App. 163.

If it be the case, as is urged, that the order to produce was in any respect uncertain, so that either of the respondents was not informed as to what books or papers were meant thereby, answer to that effect might have been made and the court could not properly have inflicted punishment for a failure to produce that not described or pointed out in such manner that the respondent was informed what was asked for.

The refusal of each respondent was willful, whether based upon advice of counsel or a misapprehension of the law. Lansing v. Easton, 7 Paige, 364.

Nor was the punishment excessive. The respondents, in respectful language, under the advice of learned and distinguished counsel, refused to obey its order. What fine short of $500 would have been adequate and not excessive is not suggested. As before stated, possession of a portion of the books called for was in effect admitted by the answers; while, save as to a diary kept by Samuel Kanter, it did not appear that either respondent was unable to comply with any part of the order of court to produce books and papers, yet each refused *in toto*.

The fine was properly made payable to the clerk of court. Appellants do not suggest that they (and have no reason to) fear such payment will not be a discharge of the penalty imposed. A judgment in proceedings for contempt sufficiently sets forth the cause for which the final order was entered, if there appears upon the face of the order the general object and purpose of the proceeding, together with the finding of the court connected by apt reference to the moving papers. Vol. 4, Ency. of Pleading & Practice, 798; Fisher v. Hayes, 7 Fed. Rep. 96; Seaman v. Duryea, 11 N. Y. 324.

The punishment imposed for the contempt was a fine of $500 upon each offender. The commitment to jail until the fine should be paid was not by way of, nor a punishment, but a means adopted for enforcing payment of the fine.

In the matter of Peter Bollig, 31 Ill. 88, the Supreme Court held that while a justice of the peace had no power to try any person except as a court of inquiry, for any offense punishable with imprisonment, he had power to order that parties convicted before and fined by him should be confined in the county jail until the fine and costs were paid; that the imprisonment " is a mode provided for collecting the fine and costs * * * is but an incident of the fine."

In Brown v. The People, 19 Ill. 613, it was held that "a justice of the peace who has imposed a fine for contempt of his court can imprison the party till the fine and costs are paid." See Kennedy v. The People, 122 Ill. 649.

That where a fine is imposed, it is the punishment ordered, and the commitment is but an incident, is an established doctrine of the common law. United States v. Hudson, 7 Cranch, 32–34; Ex Parte Watkins, 7 Peters, 568–575; Kane v. The People, 8 Wend. 203; Son v. The People, 12 Wend. 344; Harris v. Commonwealth, 23 Pick. 280; The Queen v. Dunn, 12 Ad. & Ellis, N. S. 1026; note Lord's Journal, Vol. 47, p. 271; In re Yates, 4 Johns. 317, and 9 Johns. 396; Doubleday v. Sherman, 8 Blatchford, 45.

There has long been the following section of the criminal code of this state: "When a fine is inflicted, the court may order, as a part of the judgment, that the offender be committed to jail, there to remain until the fine and costs are fully paid or he is discharged according to law." As a commitment to jail until an imposed fine be paid was warranted by the law, the statute may have been enacted to call attention in the order of commitment to the right of the offender to be discharged under the provisions of Sec. 17–641, p. 1413, Starr & Curtis' Statutes.

As no person can be imprisoned if "discharged according to law," it is not apparent how the words "until he is discharged according to law" can affect, add to or take from the order of commitment. It is very clear that the court could not by an order provide that a party should be imprisoned for a certain time or until a certain thing was done, although previous thereto he was discharged according to law. Prior to the enactment of our indeterminate sentence statute most persons sentenced to the penitentiary were discharged according to law before the expiration of the term for which they were sentenced.

Notwithstanding that the words, "or until discharged, according to law," may add nothing to an order of commitment, we are of the opinion that the concluding language of the final order of the Circuit Court was erroneous. The

respondents were each fined $500, and each committed to jail, until his fine was paid, " or until he and they and each of them be otherwise released pursuant to law."

The fines were separate; neither respondent was ordered to pay any part of the fine of the other. If one paid he was entitled to be discharged. If one were pardoned he would have thus been discharged according to law. Rapalje on Contempt, Sec. 162.

By whatever course of events one became entitled by law to a discharge, he could not thereafter be retained because the other respondent was not then so entitled.

Whether either party might not become entitled to be discharged under the statute concerning imprisoned paupers, it is not now necessary to consider. Proceedings for contempt as well as those resulting in a deprivation of the personal liberty of a subject are strictly regarded. 4 Ency. of Pleading & Practice; McDonald v. The People, 86 Ill. App. 558–560.

An order of commitment to jail should be so definite and certain as to the continuance of the imprisonment that thereby the sheriff is with certainty informed as to when he is to set at liberty the subject of the order.

The order of the court continuing the imprisonment of one in case of his failure to pay his fine until both should be (otherwise than by payment of fine) released pursuant to law should not have been made. McDonald v. The People, 86 Ill. App. 558–560.

The judgment of the Circuit Court is reversed and the cause remanded.